## ALLEN C. MCLEAN'S CASE.

### Cumberland.    Opinion October 22, 1920.

*Workmen's Compensation Law.    Appeal from a decision of the Industrial Accident
Commission.    Construction given to the phrase "the loss of a foot" in Sec. 16,
Chap. 50, of the R. S., before the amendment of Public Laws 1919, Chap. 28.
Differentiation between the loss of an entire foot and a fractional
part thereof.    Decree modified.*

Appeal from decision of the Industrial Accident Commission.    The claimant, an
employe of the American Railway Express Company, on January 6, 1919,
sustained an accidental injury to his right foot while in the course of his employ-
ment in consequence of which so much of the foot as lay forward of the plane
of the front surface of the tibia or shin bone was amputated.    The ankle joint
retains its motion and the heel support is the same as before the accident.    The
claimant has lost the toes and instep but not the heel, and walks upon what
remains with the aid of a specially constructed boot having a steel support
running up the front of the tibia.

The Commission decided that this constituted "the loss of a foot" under R. S.,
Chap. 50, Sec. 16.

*Held:*

1.    That this accident occurred before the amendment of Public Laws 1919,
Chap. 28, was passed and at a time when loss of a member was construed to
mean loss by severance and not by incapacity, a distinction being drawn
between loss and loss of use.

2.    Applying this rule it is obvious that the loss of two-thirds of a foot, as in this
case, is not the loss of a foot.    The words mean the loss of an entire foot and not
of a fractional part thereof.

3.    This construction is strengthened by a study of other portions of the statute
which shows that when the Legislature intended to make the loss of a part
equal to the loss of the whole it expressly so provided.

4.    That the decree be modified and the claimant be awarded, in addition to his
medical expenses $132.50, compensation at the rate of $8.88 per week for a
period of sixty-five weeks from January 20, 1919.

This is an appeal from a decree by a Justice of the Supreme Judicial
Court, in conformity with the decision of the Industrial Accident

Commission, that the claimant on January 6, 1919, while in the employ of the American Railway Express Company, sustained an injury to his right foot, in consequence of which so much of the foot as lay forward of the plane of the front surface of the tibia was amputated. The Industrial Accident Commission held that the injury constituted "the loss of a foot" within the meaning of R. S., Chap. 50, Sec. 16, and awarded claimant in addition to his medical bills, one-half his average weekly wages, for a period of one hundred and twenty-five weeks. Appeal sustained. Decree to be modified in accordance with the opinion.

Case stated in the opinion.

*Harry E. Nixon,* for claimant.

*Verrill, Hale, Booth & Ives, and Leon V. Walker,* for respondents.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, JJ.

CORNISH, C. J. On January 6, 1919, the claimant, an employe of the American Railway Express Company, sustained an injury to his right foot in consequence of which so much of the foot as lay forward of the plane of the front surface of the tibia or shin bone was amputated. The Industrial Accident Commission decided that this constituted "the loss of a foot" under R. S., Chap. 50, Sec. 16, and accordingly awarded the plaintiff in addition to his medical bills $132.50, the sum of $8.88, being one-half his average weekly wages, for a period of one hundred and twenty-five weeks, beginning January 20, 1919.

It is admitted that the injury arose out of and in the course of employment and the only question to be decided by this court on appeal is whether the Commission erred as a matter of law in so construing the statute as to hold that the claimant had sustained the loss of a foot under Section 16. Nor is there any controversy as to the extent of the injury and amputation. Dr. Twitchell who performed the operation and the only surgical witness in the case, testified that the length of his foot was $9\frac{3}{4}$ inches, that six inches were removed, and $3\frac{3}{4}$ inches were left, including the calcaneum or heel and the portion next the heel up to the line of severance; that it was necessary to take off the head of the astragalus or ankle bone where the shin bone articulates with it because otherwise he could

not get flap enough to cover it; that the ankle joint retains its motion, and that the heel support is the same as before the accident. In other words the claimant has lost the toes and instep but not the heel, and walks upon what remains of the foot, with the aid of a specially constructed boot having a steel support running up the front of the tibia. It further appears that the claimant began work September 2, 1919, at a wage of $20.75 per week which is greater than he was receiving at the time of the accident and has been at work continuously since that time.

In determining the question whether the claimant has lost his foot it must be remembered that the accident occured in January, 1919, before the amendment (Public Laws 1919, Chap. 238) took effect whereby this provision was added to Section 16 of the original statute: "In all cases of this class where the usefulness of a member or any physical function thereof is permanently impaired, the compensation shall bear such relation to the amount stated in the above schedule as the incapacity shall bear to the injuries named in this schedule and the commission shall determine the extent of the incapacity." This addition provided for cases of loss or impairment of use of a member where the member itself was not lost. Previous to this amendment the words "loss of a member" were construed to mean loss by severance and not by incapacity. Merchant's Case, 118 Maine, 96. In other words a distinction was drawn between loss and loss of use.

Applying this rule, which must apply to this case, and eliminating the question of use, the single problem remains whether the loss of two-thirds of a foot, as in this case, is the loss of a foot, whether in other words the part is equal to the whole. Anatomically speaking the foot extends from the ankle joint to the end of the toes and is divided into three parts, the tarsal bones or ankle, the metatarsal bones or instep, and the phalanges or toes. In the case at bar the metatarsal bones and phalanges were severed, while the ankle bone and the heel were left practically unimpaired. If the loss contemplated by the statute is not of the entire foot, then what fractional part shall be fixed by the court as equal to the whole? Shall it be a loss of one-third or one-half or two-thirds or four-fifths? Where shall the line be drawn? Such a construction would seem to be rather in the nature of judicial legislation then of judicial construction, and

we think it more consonant with judicial interpretation to hold that according to the common meaning of the language the statutory words "the loss of a foot," mean the loss of an entire foot and not a fractional part thereof.

Especially does this construction seem reasonable when we consider the fact that the Legislature seems to have had in mind this very question in many instances, and when it desired to make the loss of a part equivalent to the loss of the whole it expressly provided for it. Thus after specifying the compensation for the loss of a thumb and for the loss of each finger at a given rate, and the loss of the first phalange of the thumb or of any finger as one-half of the amount for the whole, it added, "The loss of more than one phalange shall be considered as a loss of the entire thumb or finger." Again after specifying the amount for the loss of a toe, and of the first phalange of any toe, the Legislature expressly said: "the loss of more than one phalange shall be considered as the loss of the entire toe." In each of these instances it is indisputable that the words "thumb," "finger" and "toe" as used in the first clause mean the entire thumb, finger or toe, and that when the intention was to make any part less than the whole equivalent to the whole, it was expressly so stated. If the claimant's contention is sound then these special provisions were entirely unnecessary because without them the loss of a substantial portion of a member is equivalent to the loss of the entire member.

Still again, "For the loss of an arm or any part above the wrist" and "the loss of a leg or any part above the ankle," are provisions carrying out the legislative intention with precision. But in the clause of Section 16, now under consideration, there is no such modifying provision. It does not say "For the loss of a foot or the parts in front of the heel," nor "the loss of the toes and instep shall be considered as the loss of the entire foot," but simply and baldly "for the loss of a foot" without any diminution or qualification whatever. This must mean the entire foot and nothing less.

Counsel for claimant calls our attention to a line of cases in other States, but upon examination these are found to have arisen under statutes given compensation for loss of use and therefore are not authorities in the case at bar.

Our conclusion therefore is, that the decree should be modified, and the claimant should be awarded in addition to his medical ex-

penses, $132.50, compensation for the loss of his toes at the rate of $8.88 per week for a period of sixty-five weeks from January 20, 1919.

> *Appeal sustained.*
> *Decree to be modified in accord-*
> *ance with the opinion.*